IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NECHOLAS NOEL and CARTION NOEL,

              Appellants,

    v.

ONEWEST BANK F/D/B/A INDYMAC
BANK,

              Appellee.

CIVIL ACTION
NO. 14-2899

*14-2335-file*

## OPINION

**Slomsky, J.**                                                   **March 12, 2015**

### I.    INTRODUCTION

This appeal is brought by Appellants Necholas and Cartion Noel ("the Noels") against Appellee OneWest Bank ("OneWest"), formerly doing business as ("f/d/b/a") IndyMac Bank. The Noels appeal an Order entered by the Bankruptcy Court that granted OneWest's Motion to Dismiss the Noels' Complaint with prejudice and OneWest's Motion for Sanctions. The Complaint was filed in the Bankruptcy Court. The Noels contend that the Bankruptcy Court did not have jurisdiction to enter the Order in the adversary proceeding initiated by the filing of the Complaint because the underlying bankruptcy had been dismissed. The Noels also argue that the sanctions award should not have been granted because counsel for the Noels had not committed any acts warranting sanctions.

For reasons that follow, the Court will affirm the Bankruptcy Court's dismissal of the Noels' Complaint. In addition, the Court will not rule on the propriety of the sanctions award because it is not ripe for consideration on appeal to the District Court.

## II.    BACKGROUND

Because the Noels only challenge the jurisdiction of the Bankruptcy Court to enter the Order appealed, and do not challenge the merits of the case that was the subject of OneWest's Motion to Dismiss the Complaint, the facts underlying the adversary proceeding are not set forth in detail below. The procedural history is described, however, in more detail because it is relevant in determining whether the Bankruptcy Court committed an abuse of discretion by retaining jurisdiction over the adversary proceeding after the dismissal of the bankruptcy.

In this case, the Noels commenced two adversary proceedings by filing two different Complaints. The first adversary proceeding will be referred to as "Noel I," and the second adversary proceeding will be referred to as "Noel II." The facts leading up to the filing of both Complaints follows.

### A.    The Loan and Subsequent Transfer of the Loan

On March 5, 2002, the Noels obtained a construction loan from IndyMac Bank ("IndyMac") in the amount of $365,110.50. (Compl. at 2, Noel v. OneWest Bank, No. 12-00308-mdc (Bankr. E.D. Pa. Apr. 13, 2012)).[1] IndyMac was shut down on July 11, 2008, and the Office of Thrift Supervision ("OTS") appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for IndyMac. (Mot. to Dismiss at 6, Noel I, May 15, 2012). That same day, the OTS created a new entity, titled "IndyMac Federal." (Id.) The assets of IndyMac— including the Noels' loan—were transferred into IndyMac Federal and the FDIC was appointed as conservator for IndyMac Federal. (Id.) On March 19, 2009, the FDIC transferred assets from IndyMac Federal to an entity known as "IndyMac Venture." (Id.) Among the assets transferred

---

[1] The Court will use a short citation for filings in Noel I that will appear as: (Document Name, Noel I, Filing Date). Following the first full citation in Noel II, the Court will use a similar citation for filings in Noel II: (Document Name, Noel II, Filing Date).

ed[1]23359 Page 3 of 19

was the Noels' loan. (Id.) As part of the transaction that resulted in the asset transfer, IndyMac Venture entered into a servicing agreement with OneWest, a federal savings bank, under which OneWest acquired the rights to service the Noels' loan. (Id. at 7.)

**B. The Noels File for Bankruptcy and Default on the Loan**

On August 24, 2009, the Noels filed for Chapter 13 Bankruptcy protection. (Chapter 13 Voluntary Pet., In re Noel, 09-16275-mdc (Bankr. E.D. Pa. Aug. 24, 2009)). On December 16, 2010, the bankruptcy petition was dismissed by the Honorable Judge Magdeline Coleman because the Noels failed to submit various documents to the Court. (Order, In re Noel, 09-16275-mdc (Bankr. E.D. Pa. Dec. 16, 2010)). On June 17, 2011, the Noels again filed for bankruptcy and once again the case was assigned to Judge Coleman. (Voluntary Pet., In re Noel, 11-14836-mdc (Bankr. E.D. Pa. June 17, 2011)). A month later, on July 17, 2011, the Noels defaulted on the construction loan that had been transferred for servicing to OneWest Bank. (Mot. to Dismiss at 1, Noel I, May 15, 2012).

**C. The Noels File an Adversary Action Against OneWest ("Noel I")**

The Noels initiated an action against OneWest on April 13, 2012 by filing a Complaint in the Bankruptcy Court. The filing of the Complaint begins a proceeding known as an adversary proceeding,[2] which was assigned to Judge Coleman because she presided over the Noels' underlying bankruptcy case.[3] (Compl., Noel I, Apr. 13, 2012). The Noels made two claims

---

[2] An adversary proceeding "is the bankruptcy analog of the civil action. It is a separate and distinct litigation connected with the bankruptcy case and has a separate docket number on the adversary proceeding docket . . . ." John Silas Hopkins III, Adversary Proceedings in Bankruptcy, 39 No. 6 Prac. Law 55, 55-56 (1993). Federal Rule of Bankruptcy Procedure 7001 contains a list of proceedings that fall under the adversary proceeding umbrella, including "a proceeding to recover money or property."

[3] This adversary proceeding, as will be described later, had multiple stages, and overlapped at times with the second adversary proceeding, Noel II.

3

2335-JHS Document 3 Filed 09/02/15 Page 4 of 19

against OneWest in this proceeding ("Noel I"): (1) breach of contract; and (2) violations of 72 P.S. §§ 203-3, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Id. at 5, 6.) On May 15, 2012, OneWest filed a Motion to Dismiss the Complaint, submitting that the Noels' based their Complaint on the actions of IndyMac/IndyMac Federal, and did not attribute any wrongdoing to the actions of OneWest, the servicing bank. (Mot. to Dismiss, Noel I, May 15, 2012). OneWest also argued in the Motion that the claims were barred by the Federal Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") because the claims in the Noels' Complaint were based on the actions of IndyMac/IndyMac Federal—an entity that was placed under the receivership of the FDIC. For this reason, OneWest argued, the Noels were obligated to pursue their claims first through the administrative process set out in FIRREA before proceeding to a different court. (Id.)[4]

On June 26, 2012, the Bankruptcy Court granted One West's Motion to Dismiss. (Order, Noel I, June 26, 2012). Citing FIRREA, the Court dismissed the claims based on the alleged conduct of IndyMac with prejudice, as well as the claims based on conduct that occurred prior to March 19, 2009—the date that the Noels' loan was transferred to OneWest for servicing. The Court, however permitted the Noels to amend their Complaint to include claims based on the conduct of OneWest.

On July 16, 2012, the Noels filed an Amended Complaint alleging the following claims against OneWest: (1) promissory estoppel/detrimental reliance; (2) breach of contract, which included the following sub-claims: (a) bad faith and unfair dealing, (b) failing to apply a reduced interest rate to the loan, (c) overcharging, and (d) failing to convert the construction loan to a

---

[4] FIRREA, found in 12 U.S.C. § 1821, regulates the sale and transfer of assets and liabilities of failed banks. It mandates that litigants who have claims arising from actions of financial institutions that were placed under the receivership of the FDIC must exhaust FIRREA's administrative process before pursuing a claim in court.

4

mortgage loan; and (3) violations of the UTPCPL.  (Am. Compl., Noel I, July 16, 2012).  In addition, in the Amended Complaint the Noels asserted claims based on OneWest's failure to modify the loan pursuant to the federally regulated Home Affordability Modification Program ("HAMP").  (Id.)

On August 16, 2012, OneWest filed a Motion to Dismiss the Amended Complaint, citing again that the Noels' claims were based on the actions of IndyMac and thus barred by FIRREA's exhaustion requirement, and that the Noels otherwise failed to state a claim upon which relief could be granted.  (Mot. to Dismiss, Noel I, Aug. 16, 2012).  On September 18, 2012, the Bankruptcy Court dismissed the Noels' Amended Complaint finding that some claims under breach of contract—(2)(d) failure to convert the construction loan to a mortgage loan, and (2)(b) failure to apply a reduced interest rate to the loan—were barred by FIRREA because the alleged wrongdoing was once again attributed to the actions of IndyMac/IndyMac Federal.  (Order, Noel I, Aug. 16, 2012).  The bad faith and unfair dealing claim alleged under breach of contract in (2)(a) was also dismissed because Pennsylvania law does not recognize such a cause of action. The remaining claims—(1) promissory estoppel/detrimental reliance; (2)(c) breach of contract based on overcharges; and (3) violations of the UTPCPL were dismissed without prejudice with leave to file a second amended complaint within ten days.  (Id.)

On October 3, 2012, the Noels filed a Second Amended Complaint against OneWest despite missing the ten-day deadline that ended on September 28, 2012.  The Noels asserted the following claims in their Second Amended Complaint: (1) breach of Contract; and (2) violations of the UTPCPL.  (Second Am. Compl., Noel I, Oct. 3, 2012).  On October 22, 2012, OneWest filed a Motion to Dismiss the Second Amended Complaint.  (Mot. to Dismiss, Noel I, Oct. 22, 2012).  Two days later, on October 24, 2012, the Noels filed a Praecipe to Withdraw the Second

5

Amended Complaint, but did not voluntarily dismiss the adversary proceeding. (Praecipe to Withdraw, Noel I, Oct. 24, 2012). The Bankruptcy Court—without ruling on OneWest's Motion to Dismiss—dismissed the Noels' Second Amended Complaint on November 30, 2012 as a sanction for failing to timely file the Second Amended Complaint. (Order, Noel I, Nov. 30, 2012).

**D.      The Noels File a Second Adversary Proceeding Against OneWest ("Noel II")**

On October 5, 2012, while the above action was proceeding and two days after the Noels' filed their untimely Second Amended Complaint, the Noels initiated a second adversary proceeding ("Noel II") against OneWest. (Compl., 12-0626-mdc (Bankr. E.D. Pa. Oct. 4, 2012)).[5] Because Judge Coleman was assigned the Noels' bankruptcy case and first adversary proceeding ("Noel I"), Judge Coleman was also assigned to the second adversary proceeding against OneWest. The Noels in their new Complaint note the following:

> [The Noels'] prior adversary action filed at #12-308-MDC was dismissed repeatedly on [Judge Coleman's] perception that [the Noels] sought relief for acts/omissions of the predecessor, despite [the Noels'] plead disclaimers to the contrary. The claims brought under this case are claims that have not been dismissed with prejudice in the prior adversary proceeding.

(Compl., Noel II, Oct. 4, 2012).

The Complaint in Noel II, based on the same events as Noel I, contains three claims against OneWest: (1) promissory estoppel; (2) breach of contract; and (3) violations of the UTPCPL. (Compl., Noel II, Oct. 4, 2012). The Complaint also states in bold that references to IndyMac or events occurring prior to March 2009 are for background only. (Id.) On November 21, 2012, while OneWest's Motion to Dismiss the Noels' Second Amended Complaint in Noel I was still pending, OneWest filed a Motion to Dismiss the Noel II Complaint for failing to state a

---

[5] As noted above, citations to filings in the second adversarial proceeding, "Noel II," will appear as follows: (Document Name, Noel II, Filing Date).

claim, and a Motion for Sanctions based on the Noels' attempt to maintain simultaneous actions involving the same claims and parties. (Mot. to Dismiss, Noel II, Nov. 21, 2012).

### E.     The Noels Appeal the Dismissal of Noel I

Following the Court's dismissal of Noel I for the untimely filing of the Second Amended Complaint, the Noels appealed the dismissal to this Court on December 12, 2012. (Notice of Appeal, Noel I, Dec. 12, 2012). On December 20, 2012, Judge Coleman stayed further proceedings in Noel II pending the outcome of the appeal in Noel I. (Order, Noel II, Dec. 20, 2012).

On September 17, 2013, this Court vacated the dismissal in Noel I finding that Judge Coleman had not analyzed whether dismissal as a sanction was appropriate under the factors discussed in Poulis v. State Farm Fire & Casualty Co, 747 F.2d 863 (3d Cir. 1984). Following this Court's decision, the Bankruptcy Court scheduled a status conference to take place on November 14, 2013 in Noel I. (Order, Noel I, Oct. 10, 2013).

### F.     Noel I is Dismissed and Noel II Proceeds

On December 13, 2013, following the conference and with the consent of the parties, Noel I was dismissed without prejudice. (Order, Noel I, v. Dec. 13, 2013). On the same day, the Court in Noel II lifted the stay that had been filed during the pendency of the Noel I appeal, scheduled a hearing on OneWest's Motion to Dismiss and Motion for Sanctions for January 17, 2014, and invited the parties to submit supplemental briefs on the Motions. (Order, Noel II, Dec. 13, 2013).

### G.     Noels and Counsel for the Noels Fail to Attend the Hearing on OneWest's Motions and the Underlying Bankruptcy Case is Dismissed

At the hearing on January 17, 2014, the Noels and their counsel failed to appear. Counsel for the Noels left a voicemail with Judge Coleman's Courtroom Deputy stating that the Noels

7

had advised her that they could no longer proceed with the bankruptcy due to "extreme hardship" and did not intend to appear at the hearing. (Order, Noel II, Jan. 17, 2014). Counsel claimed that the Noels' request prevented her from "[taking] even one step forward on behalf of the clients—on any matter, including the procedural posture of the case." (Mem., Noel II, Feb. 6, 2014).

Later that same day, on January 17, 2014, the Court entered an Order requesting the parties to appear at a show cause hearing on February 6, 2014 on whether the Noels' failure to appear would justify sanctions. On January 30, 2014, a week before the scheduled hearing, Judge Coleman dismissed the bankruptcy proceeding because the Noels failed to make plan payments. (Order, In re Noel, 11-14836-mdc, (Bankr. E.D. Pa. Jan. 30, 2014)). In the dismissal Order, Judge Coleman wrote that the Bankruptcy Court would "retain jurisdiction to address the show cause hearing scheduled for February 6, 2014."[6] (Id.)

### H.     The Bankruptcy Court Grants OneWest's Motions to Dismiss and for Sanctions

On March 12, 2014, the Court entered an Order granting OneWest's Motion to Dismiss and Motion for Sanctions. (Order, Noel II, Mar. 12, 2014). The Order reads as follows:

> THIS MATTER having come before the Court upon a Motion to Dismiss [the Noels'] Complaint and for Sanctions filed by Defendant OneWest Bank, FSB, and the Court having considered the arguments in support of the Motion, as well as any arguments in opposition thereto; and for good case [sic] shown;
>
> IT IS THIS 12th day of March 2014 hereby
>
> ORDERED that [OneWest's] Motion to Dismiss is GRANTED and that [the Noels'] Complaint is DISMISSED WITH PREJUDICE.

---

[6] The Noels contend that Judge Coleman erred by failing to expressly retain jurisdiction over the adversary proceeding in Noel II following the dismissal of the bankruptcy. This argument is unavailing as "express retention over the adversary proceeding upon disposition of the related bankruptcy case is unnecessary." In re Morris, 950 F.2d 1531, 1534 (11th Cir. 1992).

IT IS FURTHER ORDERED that Defendant's Motion for Sanctions is GRANTED and that sanctions in the amount of the counsel fees incurred by OneWest in preparing its motion to dismiss and the motion to dismiss [the Noels'] second amended complaint in Noel I are awarded to OneWest and against [the Noels].

(Id.)

## I.      The Appeal of the March 12, 2014 Order to this Court

On March 26, 2014, the Noels appealed the dismissal and award of sanctions to this Court.  (Notice of Appeal, Noel II, Mar. 26, 2014).  The Noels raised the following issues on appeal: (1) whether the Bankruptcy Court had subject matter jurisdiction to enter the dismissal Order; and (2) whether the Order was supported by any facts that demonstrated bad acts or bad faith.[7]  (Doc. No. 5 at 4.)  For reasons that follow, this Court finds that the Bankruptcy Court had jurisdiction to enter the dismissal Order in Noel II, and that an appeal on the sanctions award is premature.

## III.     STANDARD OF REVIEW

The Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a), which provides that

> the district courts of the United States shall have jurisdiction to hear appeals from judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

Id.

A district court reviews a bankruptcy court's decision to retain jurisdiction over an adversary proceeding following the dismissal of the related bankruptcy case using an abuse of

---

[7] On March 27, 2014, following the Noels' appeal to this Court, OneWest filed a proposed Order to withdraw its Motion for Sanctions in Noel II, which the Bankruptcy Court was unable to consider because it lacked jurisdiction over the case while the appeal was pending.  (Proposed Order, Noel II, Mar. 27, 2014; Order, Noel II, Apr. 22, 2014).

9

discretion standard.  In re Smith, 866 F.2d 576, 580 (3d Cir. 1989).  Similarly, in reviewing the imposition of sanctions, the district court reviews for an abuse of discretion.  Nicola v. Piscitelli, No. Civ. A. 01-2448, 2001 WL 34371704, at *3 (E.D. Pa. Dec. 14, 2001).  To prove an abuse of discretion, the Noels must establish that the bankruptcy court's actions were arbitrary, fanciful, or clearly unreasonable.  The exercise of discretion should not be disturbed "unless no reasonable person would adopt the district court's view."  Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 412 (3d Cir. 2002).

## IV.   ANALYSIS

### A.   The Bankruptcy Court Did Not Abuse its Discretion in Retaining Jurisdiction over the Adversary Proceeding

The first issue raised by the Noels on appeal is whether Judge Coleman had jurisdiction to enter the Order in Noel II that granted OneWest's Motions to Dismiss and for Sanctions after the related bankruptcy proceeding had been dismissed.  The Noels contend that the dismissal of the underlying bankruptcy proceeding deprived the Bankruptcy Court of jurisdiction over the related adversarial claim.

In deciding whether a Bankruptcy Court has jurisdiction over an adversary proceeding, the Bankruptcy Court must make a threshold determination as to whether the adversary proceeding is "related to" the bankruptcy.  Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984).  As the Noels correctly note in their brief, "the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  (Doc. No. 5 at 5 (citing Pacor, Inc., 743 F.2d at 994)).  If this threshold determination on relatedness is satisfied when made at the outset of an adversarial proceeding, a bankruptcy court properly has jurisdiction over the related adversarial proceeding.

10

In the event that the underlying bankruptcy case is dismissed, the bankruptcy court must engage, however, in a different inquiry than the "related-to" test which is applied at the outset of the adversary proceeding.  A new inquiry is required because as a general rule, the dismissal of a bankruptcy case should result in the dismissal of related proceedings.  In re Stardust Inn, Inc., 70 B.R. 888, 890 (Bankr. E.D. Pa. 1987).  The rationale behind this rule is that the bankruptcy court's jurisdiction over an adversarial proceeding depends at first on "the nexus between the underlying bankruptcy case and the related proceeding," which is the argument relied on by the Noels.  Id.  However, there are circumstances where retention of the adversary proceeding by the bankruptcy court still is appropriate even when the bankruptcy is dismissed.  The Third Circuit in In re Smith set forth three factors to consider in making this decision: (1) judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related issues involved.  866 F.2d 576, 580 (3d Cir. 1989).  For reasons that follow, the Court finds that Judge Coleman's decision to retain jurisdiction over the pending adversary claim did not amount to an abuse of discretion.

### 1.    Judicial Economy

Under In re Smith, the first factor to consider when analyzing whether a bankruptcy court retains jurisdiction over an adversary proceeding following the dismissal of a bankrtupcy is judicial economy.  "Judicial economy looks to preserve energies already invested by the parties and the court in the proceedings."  In re Stardust Inn, 70 B.R. at 891.  For example, the court in In re Smith found that judicial economy weighed in favor of the bankruptcy court retaining jurisdiction because "the core proceedings [had] been before the bankruptcy court for over four years."  866 F.2d at 580.  In another case, In re Morris, the adversary proceeding was at a similar stage when the underlying bankruptcy case was dismissed.  950 F.2d 1531 (11th Cir. 1992).

11

There, the adversary case had been pending for four years and was ready to proceed to trial when the bankruptcy was dismissed. The court reasoned that judicial economy was promoted by the bankruptcy court retaining the adversary proceeding. Morris, 950 F.2d at 1535.

Although the proceedings in In re Morris and In re Smith had reached an advanced stage in the litigation, it is not necessary for the parties to have proceeded to the eve of trial in order for judicial economy to weigh in favor of retention. The district court found in In re Huntington Park Associates that even though the court had yet to rule on any substantive matter, "the parties [had] briefed six motions to dismiss based on three different theories." No. 91-B-10100, 1993 WL 86802, at *2 (N.D. Ill. Mar. 24, 1993). This fact convinced the district court that judicial economy was served when the bankruptcy court retained jurisdiction over the adversary proceeding after dismissal of the bankruptcy case.

It follows then that where very few resources have been invested in the adversary case— like efforts necessary to complete service upon a party—judicial economy will not weigh in favor of retention. See In re Grocott, 507 B.R. 816, 820-21 (E.D. Pa. 2014) (finding that "[w]hile there is no baseline of resources that must be expended to permit retention, the mere service of the complaint on two of the three defendants is hardly a substantial investment of judicial resources"); In re Sanders, No. CC-12-1398, 2013 WL 1490971, at *9 (B.A.P. 9th Cir. April 11, 2013) (deciding that because the adversary proceeding had been filed the day before the bankruptcy dismissal hearing, judicial economy did not weigh in favor of retaining jurisdiction).

Although the Noels' case was not of the duration or at the same stage as the cases in In re Morris and In re Smith, judicial economy nevertheless weighed in favor of Judge Coleman retaining the adversary proceeding. Noel I was commenced in April 2012. OneWest filed a

Motion to Dismiss in May, and after a Response by the Noels, a Reply by OneWest, and a hearing, Judge Coleman granted the Motion to Dismiss on June 26, 2012. Judge Coleman dismissed some claims with prejudice and permitted the Noels to file an Amended Complaint.

The Noels filed the Amended Complaint on July 16, 2012. OneWest again filed a Motion to Dismiss, and after a Response by the Noels, a Reply by OneWest, and another hearing, Judge Coleman again granted OneWest's Motion to Dismiss the Amended Complaint.

The Noels filed a Second Amended Complaint on October 3, 2012. OneWest, for the third time in this case, filed a Motion to Dismiss. Judge Coleman dismissed the case in order to sanction the Noels for their untimely filing. The Noels appealed this Order and the case was eventually remanded. Upon consent of the parties, the case was dismissed without prejudice.

The Noels then filed a second adversary proceeding—Noel II—while the Second Amended Complaint in Noel I was pending. OneWest filed the fourth Motion to Dismiss in November 2012 as well as the Motion for Sanctions. The Noels filed a Response and OneWest a Reply. Judge Coleman scheduled a hearing on the Motions for January 17, 2014 and invited supplemental briefing. The Noels filed a Sur-Reply to the Motion to Dismiss, which the Court reviewed prior to the hearing. At the hearing on January 17, 2014, the Noels and their counsel failed to appear. A "show cause" hearing was scheduled and further briefing regarding the imposition of sanctions was ordered.

On January 30, 2014, the bankruptcy was dismissed. The show cause hearing was held on February 6, 2014. On March 12, 2014, after considering OneWest's Motion, the Noels' Response, OneWest's Reply, the Noels' Sur-Reply, and additional briefing filed by the Noels on the topic of sanctions, the Bankruptcy Court granted OneWest's Motion to Dismiss the Complaint in Noel II, and granted the Motion for Sanctions.

13

From the procedural history described above, during the two years that this case was pending, extensive motion practice ensued before the Bankruptcy Court. Judge Coleman reviewed four motions to dismiss, and granted three on the merits after reviewing the numerous filings. Although the adversary proceedings in Noel I and Noel II had been pending for just shy of two years as compared to the four-year case histories of In re Smith and In re Morris, the lengthy procedural history in this case demonstrates beyond peradventure the considerable amount of judicial resources invested in this proceeding. In fact, the Noels admit in their Reply Brief that the adversary cases have caused "ridiculous amounts of work and hearings . . ." while the issue of sanctions has consumed "the [C]ourt's and Noels' and counsel's time and resources." (Doc. No. 7 at 4.) Moreover, the Noels' adversary proceedings progressed far beyond the stages noted in In re Sanders and In re Grocott, where the complaint had not yet been served by the time the bankruptcy case was dismissed.

Accordingly, in light of the extensive motion practice that ensued over the two-year life of the Noels' adversary proceeding, which required the Bankruptcy Court to consider numerous filings, briefs, and oral argument, judicial economy was best served by the Bankruptcy Court retaining jurisdiction over the Noels' adversary case. Thus, this factor weighed in favor of retention.

### 2.        Fairness and Convenience to the Litigants

The next factor to analyze under In re Smith when considering whether to retain jurisdiction over an adversary proceeding after dismissal of the bankruptcy case is the fairness and convenience to the litigants. Fairness to the litigants requires analyzing whether the parties would be prejudiced by dismissal. See In re Stardust Inn, 70 B.R. at 891 (examining under the fairness and convenience prong whether the statute of limitations would bar plaintiffs from

14

refiling their claims in state court in the event that the adversary proceeding was dismissed along with the bankruptcy case).

The Noels had many opportunities during the pendency of Noel I and Noel II to craft a complaint that could survive a motion to dismiss.   The Noels' Complaint and Amended Complaint in Noel I stated claims barred by FIRREA and otherwise failed to overcome OneWest's Motions to Dismiss. The Noels drafted a Second Amended Complaint in Noel I that was the subject of OneWest's third Motion to Dismiss.  While that case was still pending, the Noels drafted their fourth Complaint, which initiated Noel II.  In the Complaint, the Noels, unwilling to believe that their prior complaints had failed on the merits, stated the following:

> [The Noels'] prior adversary action filed at #12-308-MDC was dismissed repeatedly on [Judge Coleman's] perception that [the Noels] sought relief for acts/omissions of the predecessor, despite [the Noels'] plead disclaimers to the contrary.

(Compl., Noel II, Oct. 5, 2012).

After that Complaint was dismissed by the Bankruptcy Court on the merits, the Noels appealed the decision on jurisdictional grounds, which is the subject of the present appeal.  The Noels in their appeal wrote:

> The Order of the [B]ankruptcy [C]ourt entered in the Noel case should be vacated and in its place this [C]ourt should issue a dismissal without prejudice, leaving the Noels free to finally litigate their claims contained in the Adversary case.

(Doc. No. 5 at 9.)

The Noels have now claimed twice—first in their Complaint in Noel II and second in their appeal here—that they have been unable to litigate their claims.  Judge Coleman, however, gave the Noels every opportunity to redraft their Complaint in order to overcome a motion to dismiss.  Moreover, if Judge Coleman had dismissed the Noels' adversary proceeding in Noel II without prejudice when she dismissed the bankruptcy, the Noels may have filed a fifth complaint

based on the same facts in a different forum.  Fairness would not require affording the Noels a fifth opportunity to assert their claims, this time in a different forum.  Rather, the fairness and convenience of the parties were served when the Bankruptcy Court exercised restraint by maintaining jurisdiction over Noel II through the filing of at least four different complaints, three in Noel I and one in Noel II.  Therefore, the factor of fairness and convenience to the litigants also weighed in favor of retaining jurisdiction.

### 3.   Degree of Difficulty of Issues Involved

The final factor to consider when deciding whether to retain jurisdiction over an adversary proceeding following the bankruptcy dismissal under In re Smith is the degree of difficulty of the issues involved.  Here, the Noels made the following claims against OneWest in the Complaint in Noel II: (1) promissory estoppel; (2) breach of contract; and (3) violations of the UTPCPL.  (Compl., Noel II, Oct. 5, 2012).

The facts underlying the adversary proceeding have not changed since the original Complaint was filed in Noel I, and the claims essentially have centered on breach of contract violations and violations of the UTPCPL since the case originated.  (See (Compl., Noel I, Apr. 13, 2012 (alleging breach of contract and violations of the UTPCPL against OneWest)); (Am. Compl., Noel I, July 16, 2012 (alleging promissory estoppel/detrimental reliance, various breach of contract claims, and violations of the UTPCPL against OneWest)); (Second Am. Compl., Noel I, Oct. 3, 2012 (alleging breach of contract and violations of the UTPCPL against OneWest)); (Compl., Noel II, Oct. 5, 2012 (alleging promissory estoppel, breach of contract, and violations of the UTPCPL against OneWest))).

These state law claims do not involve unsettled areas of Pennsylvania law, and although a bankruptcy judge would have specialized knowledge of bankruptcy law, the judge could readily

decide issues involving these claims too.  In fact, Judge Coleman did review the state law applicable to the Noels' claims several times and made rulings on their merits.  She decided three motions to dismiss on the merits, analyzing and applying the law.  By the time the bankruptcy was dismissed, Judge Coleman was well-versed in the Noels' claims.  Consequently, the degree of difficulty also weighed in favor of the Bankruptcy Court retaining jurisdiction over the adversary proceeding after the bankruptcy was dismissed.

Because the factors under In re Smith all weighed in favor of retention by the Bankruptcy Court of the adversary proceeding following the bankruptcy dismissal, it was not an abuse of discretion for Judge Coleman to retain jurisdiction over the Noels' adversary proceeding. Consequently, Judge Coleman had jurisdiction to decide OneWest's Motion to Dismiss and enter the Order dismissing the Noels' Complaint in Noel II with prejudice.

**B.      The Noels' Appeal of the Sanctions Award is Premature**

The second issue raised by the Noels on appeal is the propriety of Judge Coleman's sanctions award.  The Noels seek to have this Court make a finding that there was no bad acts or bad faith by their counsel.  This issue is premature for the following reason.  Judge Coleman's order states:

> [One West's] Motion for Sanctions is GRANTED and that sanctions in the amount of the counsel fees incurred by OneWest in preparing its Motion to Dismiss [the complaint in Noel I] and the Motion to Dismiss Plaintiff's Second Amended Complaint in Noel I are awarded to OneWest and against Plaintiff. Order, Noel II, (Mar. 12, 2014).

"An award of sanctions is not a final order, and thus not appealable, until the . . . court determines the amount of the sanction."  Lazorko v. Pa. Hosp., 237 F.3d 242, 248 (3d Cir. 2000). Here, the sanction amount was not determined before the Noels took the present appeal.

Therefore, this Court does not have jurisdiction to consider the propriety of the Order awarding sanctions.[8]

The Court notes that after the Noels filed this appeal, OneWest withdrew its Motion for Sanctions and requested that Judge Coleman amend its Order to reflect only the Motion to Dismiss. Judge Coleman was unable to consider OneWest's Proposed Order because she no longer had jurisdiction over the case during the pendency of the appeal. Therefore, upon the conclusion of this appeal, jurisdiction will return to Judge Coleman and she can consider the Proposed Order withdrawing the Motion for Sanctions.

## V.   CONCLUSION

For all the foregoing reasons, it was not an abuse of discretion for the Bankruptcy Court to retain jurisdiction over Noel II following the dismissal of the bankruptcy case. Therefore, the Order of March 12, 2014 dismissing the Noels' Complaint will be affirmed. Moreover, the Noels' appeal on the Order awarding sanctions by the Bankruptcy Court was premature. For this

---

[8] The Noels incorrectly argue that Judge Coleman's dismissal with prejudice was a sanction based on counsel's failure to attend a hearing on the Motion to Dismiss and Motion for Sanctions. This is incorrect and belied by the text of the Order. Judge Coleman granted OneWest's Motion to Dismiss the Complaint in Noel I on the merits, and also granted OneWest's Motion for Sanctions in the Order reproduced below:

IT IS THIS 12th day of March 2014 hereby

ORDERED that [OneWest's] Motion to Dismiss is GRANTED and that [the Noels'] Complaint is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant's Motion for Sanctions is GRANTED and that sanctions in the amount of the counsel fees incurred by OneWest in preparing its motion to dismiss and the motion to dismiss [the Noels'] second amended complaint in Noel I are awarded to OneWest and against [the Noels].

Order, Noel II, (Mar. 12, 2014). Judge Coleman did not invoke Rule 41 to dismiss the action as a sanction, and thus an analysis of the Poulis factors set forth in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984) was not necessary.

reason, this Court does not have jurisdiction to consider the propriety of the sanctions award.  An appropriate Order follows.